**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JEFFREY CAVALIER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 20-cv-03883 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| SPEEDWAY, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Jeffrey Cavalier visited a Speedway gas station operated by Defendant Speedway, LLC and ordered a sandwich from the café. Cavalier claims that while he was standing in line to pay, he saw the employee preparing his sandwich, Defendant Erik Bohler, spit in his food. According to Cavalier, Bohler did so because Cavalier is an African American. Thus, Cavalier has sued Speedway and Bohler, claiming that they discriminated against him in a place of public accommodation in violation of Title II of the Civil Rights Act of 1964 ("Title II"), 42 U.S.C. § 2000a. Cavalier also asserts Illinois state-law claims for intentional infliction of emotional distress ("IIED"); negligent training, hiring, retention, and supervision; and gross negligence. Now before the Court are Defendants' motion to dismiss the Fourth Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. No. 72), and their motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) (Dkt. No. 73). For the reasons that follow, Defendants' Rule 12(b)(6) motion to dismiss is granted in part and denied in part, and their motion for judgment on the pleadings is denied.

## BACKGROUND

For the purposes of the motions, the Court accepts all well-pleaded facts in the Fourth Amended Complaint as true and views those facts in the light most favorable to Cavalier as the

non-moving party. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The Fourth Amended Complaint alleges as follows.

Cavalier, an African-American man, works as a truck driver. (Fourth Am. Compl. ¶¶ 6, 11, Dkt. No. 70.) At the time of the incident underlying this lawsuit, Cavalier frequently visited a West Chicago Speedway station located at 1501 West Roosevelt Road while making deliveries. (*Id.* ¶¶ 12, 19, 24.) During previous visits, Cavalier recalled negative interactions with Bohler, a Speedway employee who worked as a food preparer. (*Id.* ¶¶ 9–10, 25.) According to Cavalier, Bohler was often rude to him and appeared visibly annoyed when he would talk to other customers about race in the United States and the Black Lives Matter movement. (*Id.* ¶¶ 23, 26–28, 30.)

On June 2, 2019, Cavalier visited the Speedway station and ordered a sandwich from a kiosk. (*Id.* ¶¶ 12, 14.) Bohler was working as the food preparer that day. (*Id.* ¶ 13.) After grabbing some other items, Cavalier proceeded to the cashier, paid for his purchases, and returned to the area where Bohler was preparing his sandwich. (*Id.* ¶¶ 15, 17.) As he waited for his sandwich, Cavalier began discussing the Black Lives Matter movement with another customer. (*Id.* ¶¶ 17–18.) During that time, Cavalier had a clear view of Bohler preparing his sandwich. (*Id.* ¶ 40.) At some point, Cavalier observed Bohler lean over and spit in his sandwich. (*Id.* ¶ 45.) Upon seeing this, Cavalier walked over to confront Bohler. (*Id.* ¶ 46.)

Initially, Bohler denied spitting in Cavalier's sandwich. (*Id.* ¶ 47.) However, Cavalier continued the confrontation and Bohler eventually admitted to "blowing" in the direction of the sandwich. (*Id.* ¶ 48.) Cavalier then refused to accept the contaminated sandwich and demanded a refund from a Speedway manager. (*Id.* ¶¶ 51, 53.) Bohler offered to make Cavalier another sandwich or anything else he wanted, but Cavalier declined the offer and instead opted to receive

a refund. (*Id.* ¶¶ 52–53.) Ultimately, Cavalier called the police, and the responding officer spoke with both Cavalier and Bohler about the incident. (*Id.* ¶ 59.) While speaking with the officer, Bohler denied spitting in Cavalier's sandwich but conceded that he had been in a bad mood that day and might have looked down toward the sandwich he was preparing and given a frustrated blow in that direction. (*Id.* ¶¶ 61–62.) Further, Bohler acknowledged the possibility that some saliva could have left his mouth when he did so. (*Id.* ¶ 61.) Upon viewing a video of the incident, the officer decided to issue Bohler a ticket for disorderly conduct. (*Id.* ¶¶ 67–69, 72.)

Claiming that Bohler discriminated against him based on his race and caused him emotional distress, Cavalier brought the present lawsuit against Bohler and Speedway. This Court previously granted summary judgment in Defendants' favor as to Cavalier's claims against them under 42 U.S.C. § 1981 and his state-law claims for breach of warranty. (Dkt. Nos. 50, 51.) Cavalier subsequently filed the Fourth Amended Complaint, which is now the operative complaint and asserts a claim for discrimination in a place of public accommodation under Title II (Count I), as well as state-law claims for IIED (Count II), for negligent training, hiring, retention, and supervision against Speedway (Count III), and gross negligence against both Defendants (Count IV).

## DISCUSSION

Defendants have filed a motion to dismiss the Fourth Amended Complaint pursuant to Rule 12(b)(6). They have also filed a separate Rule 12(c) motion for judgment on the pleadings, in which they assert their collateral estoppel defense as a basis for dismissing the Fourth Amended Complaint. *See Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020) ("With a narrow and pragmatic exception for a plaintiff who has pleaded herself out of court, the appropriate vehicle for resolving an affirmative defense is a motion for judgment on the pleadings under Rule 12(c) . . . ."); *see also Benson v. Fannie May Confections Brands, Inc.*, 944

F.3d 639, 645 (7th Cir 2019) (explaining that moving for judgment on the pleadings under Rule 12(c), rather than filing a motion under Rule 12(b)(6), is the appropriate way to address an affirmative defense). Although distinct procedural vehicles, "a motion for judgment on the pleadings pursuant to . . . Rule 12(c) is subject to the same standard as a Rule 12(b)(6) motion to dismiss." *Katz-Crank v. Haskett*, 843 F.3d 641, 647 (7th Cir. 2016) (internal quotation marks omitted). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

Both of Defendants' motions seek dismissal of the entire Fourth Amended Complaint. In the Rule 12(c) motion, Defendants argue that Cavalier is collaterally estopped from claiming in this lawsuit that Bohler spit in his sandwich, as the issue was resolved against Cavalier during a trial on Bohler's disorderly conduct charge. In their Rule 12(b)(6) motion, Defendants contend that the allegations of the Fourth Amended Complaint are insufficient for each of Cavalier's asserted claims.

## I.     Collateral Estoppel

In Illinois, the doctrine of collateral estoppel, also known as issue preclusion, "applies when a party participates in two separate and consecutive cases arising out of different causes of action and some controlling factor or question material to the determination of both cases has been adjudicated by a court of competent jurisdiction against the party in the former suit." *Hayes*

*v. State Tchr. Certification Bd.*, 835 N.E.2d 146, 154–55 (Ill. App. Ct. 2005). Defendants argue that Cavalier should be collaterally estopped from claiming that Bohler spat in his sandwich because the judge found Bohler "not liable" for disorderly conduct at the ordinance violation trial regarding the ticket issued to Bohler for the incident. That judge's ruling was based on his factual determination that Bohler did not spit in the sandwich.

"As the name suggests, a motion for judgment on the pleadings depends on the pleadings alone." *Ruebe v. PartnerRe Ir. Ins. DAC*, 470 F. Supp. 3d 829, 843 (N.D. Ill. 2020). Here, the specifics of the ordinance violation trial are not found in the pleadings, but Defendants correctly assert that the Court may take judicial notice of the proceeding. *Id.* at 843–44 ("Courts also may take judicial notice of appropriate materials, such as . . . 'proceedings in other courts, both within and outside of the federal judicial system, if the proceedings have a direct relation to matters at issue.'" (quoting *Green v. Warden, U.S. Penitentiary*, 699 F.2d 364, 369 (7th Cir. 1983))); *see also Opoka v. INS*, 94 F.3d 392, 395 (7th Cir. 1996) ("[I]t is a well-settled principle that the decision of another court or agency . . . is a proper subject of judicial notice."). Accordingly, they have submitted the trial transcript as an exhibit to their motion. (Defs.' Mot. for J. on the Pleadings, Ex. B, Dkt. No. 73-3.)

Both Cavalier and Bohler testified at the ordinance violation trial. Indeed, Cavalier stated that he traveled from his home in Houston, Texas to West Chicago to testify at the trial out of a "feeling of . . . justice." (*Id.* at 24:12–25:7.) During the trial, the judge viewed video evidence of the incident. The judge found the video evidence particularly probative, explaining that he "saw nothing in the video that would suggest that anything came out of [Bohler's] mouth." (*Id.* at 42:5–9.) Consequently, based on his determination that "the video shows absolutely nothing like

something emulating [*sic*] from [Bohler's] mouth to a sandwich," the judge found Bohler not liable on the disorderly conduct charge. (*Id.* at 42:13–43:5.)

Defendants now argue that the judge's factual determination that Bohler did not spit in Cavalier's sandwich collaterally estops Cavalier from relitigating the issue in this case. To determine the preclusive effect of an Illinois court's judgment, a district court must apply Illinois's collateral estoppel law. *Gambino v. Koonce*, 757 F.3d 604, 608 (7th Cir. 2014) ("Federal courts must give state court judgments the same preclusive effect as a court in the rendering state, applying that state's law." (internal quotation marks omitted)). In Illinois, collateral estoppel applies to preclude relitigation of a previously decided issue in a subsequent proceeding when:

> (1) the issue decided in the prior adjudication is identical with the one presented in the suit in question; (2) there was a final judgment on the merits in the prior adjudication; and (3) the party against whom the estoppel is asserted was a party or in privity with a party to the prior adjudication.

*Bajwa v. Metro. Life Ins. Co.*, 804 N.E.2d 519, 532 (Ill. 2004). Further, "[c]ollateral estoppel is an equitable doctrine; thus, even where the threshold requirements of the doctrine are satisfied, collateral estoppel must not be applied to preclude parties from presenting their claims or defenses unless it is clear that no unfairness results to the party being estopped." *Id.* "The party claiming collateral estoppel has the burden of establishing it by clear, concise, and unequivocal evidence." *Pedersen v. Vill. of Hoffman Estates*, 8 N.E.3d 1083, 1095 (Ill. App. Ct. 2014).

Cavalier challenges Defendants' showing as to each of the three threshold collateral-estoppel elements. The Court quickly disposes of two of the arguments. First, there is no question that there is an identity of issues in this action and the ordinance violation trial. Whether Bohler in fact spat in Cavalier's sandwich is a determinative issue in both proceedings. Although Cavalier contends that he raises an alternative question in this action of whether Bohler "blew"

and inadvertently caused saliva to land on his sandwich, the judge at the ordinance violation trial expressly concluded that nothing came out of Bohler's mouth.[1] Second, Cavalier's contention that there was no final judgment on the merits is baseless. He contends there was no final judgment because he was not a party in the ordinance violation trial. But that argument conflates the final-judgment element with the party-or-privity element. Cavelier raises no distinct argument based on the lack of a final judgment on the merits, and indeed the Court finds no basis to conclude that the judge's ruling in the disorderly conduct prosecution was not a final judgment on the merits of that proceeding.

Moving on to the third element, there is no dispute that Cavalier, himself, was not a party to Bohler's disorderly conduct prosecution. Rather, in a prosecution for a violation of a municipal ordinance, it is the municipality that brings the action. 65 ILCS 5/1-2-7 ("All actions brought to enforce any fine, imprisonment, penalty, or forfeiture under any ordinance of any municipality, shall be brought in the corporate name of the municipality, as plaintiff."). The question, then, is whether Cavalier was in privity with the municipality prosecuting the disorderly conduct charge against Bohler. "Privity is said to exist between parties who adequately represent the same legal interests. It is the identity of interest that controls in determining privity, not the nominal identity of the parties." *People ex rel. Burris v. Progressive Land Devs., Inc.*, 602 N.E.2d 820, 825 (Ill. 1992) (internal quotation marks and citations

---

[1] The Court notes that, normally, "the difference in the burden of proof in criminal and civil cases precludes application of collateral estoppel." *In re Nau*, 607 N.E.2d 134, 143 (Ill. 1992) (quoting *Dowling v. United States*, 493 U.S. 342, 349 (1990)). However, prosecutions for municipal ordinance violations in Illinois are "quasi-criminal in character, though civil in form." *City of Chicago v. Brown*, 377 N.E.2d 1031, 1035 (Ill. App. Ct. 1978). And a municipality's "burden of proof in such cases is that of the civil standard, a preponderance of the evidence." *Vill. of Kildeer v. LaRocco*, 603 N.E.2d 141, 143 (Ill. App. Ct. 1992). Thus, the municipality's burden of proof in the ordinance violation trial was the same as Cavalier's burden here.

omitted). There is no bright-line definition of privity; instead "determining privity requires careful consideration of the circumstances of each case." *Pedersen*, 8 N.E.3d at 1096.

Defendants contend that privity exists between Cavalier and the prosecuting municipality because the municipality was representing the same legal interest as Cavalier—the victim of the charged disorderly conduct. They note that it was Cavalier who pressed charges against Bohler and then appeared at the trial to testify out of a sense of "justice." In short, Defendants claim that both Cavalier and the municipality shared the same interest in proving that Bohler committed the alleged wrongdoing. As Cavalier argues, however, he was only a witness in the ordinance violation trial and his interests in this litigation are distinct from those of the municipality's interests in that trial.

"To be bound by a prior adjudication, a nonparty's interests must be so closely aligned to those of a party that the party is the virtual representative of that nonparty." *Hayes*, 835 N.E.2d at 157 (internal quotation marks omitted). It is not enough that the litigants' interests are "tightly analogous." *Arellano v. Leach*, No. 14 C 1484, 2015 WL 5883016, at *6 (N.D. Ill. Oct. 6, 2015). Instead, "successive litigants have 'the same interests' only if they are seeking the same outcome," such as a damages award in favor of a specific party. *Id.* (citing *Lutkauskas v. Ricker*, 28 N.E.3d 727, 739–41 (Ill. 2015)). Consequently, it is not enough that Cavalier, like the municipality before him, seeks to prove that Bohler spat in his sandwich. The interest underlying the municipality's prosecution of Bohler was the enforcement of its ordinance, and the outcome it sought was punitive in nature—likely, a fine. By contrast, Cavalier seeks to vindicate his own interests in this litigation and seeks compensation for the emotional injuries he endured as a result of Bohler's alleged discriminatory act. Put differently, the municipality represented the interests of the local community generally, whereas Cavalier's interests are predominantly

personal. *See Lutkauskas*, 28 N.E.3d at 739–40 ("In this case, [the plaintiff] did not bring suit in his own right to enforce a claim that was personal to him. Rather, he filed his action on behalf of the [school] District, which was the real party in interest. As a consequence, his claims . . . were those of the District, as was true of the claim asserted in the earlier action.").

Finally, there is reason to question the fairness of applying collateral estoppel against Cavalier, at least on the limited record presently before the Court. In deciding whether to apply collateral estoppel to a particular situation, "a court must balance the need to limit litigation against the right of a fair adversary proceeding in which a party may fully present his case." *Talarico v. Dunlap*, 685 N.E.2d 325, 328 (Ill. 1997). That analysis often necessitates an examination of the "practical realities of litigation." *Id.* (internal quotation marks omitted). One relevant consideration is whether a party or privy had "an incentive to vigorously litigate in the former proceeding." *Id.* "In the context of prior criminal proceedings, the seriousness of the allegations or the criminal charge at the prior hearing is a factor to be considered." *Id.* Here, that the municipality was prosecuting a relatively minor offense is relevant. Indeed, some states find that many "petty infractions below the grade of misdemeanor" are "determination[s] which, under accepted common-law principles, should not be held conclusive in later cases." *Gilberg v. Barbieri*, 423 N.E.2d 807, 809–10 (N.Y. 1981); *see also State v. Walker*, 768 P.2d 668, 671 (Ariz. Ct. App. 1989) ("Collateral estoppel effect is generally denied to traffic convictions and minor offenses under accepted common law principles."). That is because "[t]he brisk, often informal, way in which these matters must be tried, as well as the relative insignificance of the outcome, afford the party neither opportunity nor incentive to litigate thoroughly or as thoroughly as he might if more were at stake." *Gilberg*, 423 N.E.2d at 810.

In sum, the Court finds that both the lack of privity between Cavalier and the prosecuting municipality and questions of fairness preclude application of collateral estoppel here. For those reasons, the Court declines to dismiss Cavalier's Fourth Amended Complaint on collateral estoppel grounds.

## II.      Discrimination in Place of Public Accommodation

Turning to the merits of the claims alleged in the Fourth Amended Complaint, the Court begins with Cavalier's Title II claim.[2] Title II provides that "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a). Cavalier claims that Defendants are liable for violating Title II on account of Bohler spitting in his sandwich because of his race.

As an initial matter, the Court observes that Cavalier seeks an award of damages in connection with his Title II claim. Although Defendants failed to raise the issue, "it is well established that individual plaintiffs cannot recover damages for claims brought under Title II;

---

[2] The Court notes that the Title II and IIED claims that Defendants seek to dismiss were asserted in Cavalier's earlier complaints. Defendants moved to dismiss both claims as asserted in Cavalier's Second Amended Complaint, but that motion was mooted after the Court granted Cavalier leave to file his Third Amended Complaint. Defendants then answered the Third Amended Complaint and moved for partial summary judgment, a motion that was not directed to either the Title II or IIED claim. Months after that motion was resolved and near the close of fact discovery, Cavalier moved for leave to file the operative Fourth Amended Complaint. This procedural history raises a question as to whether Defendants might be deemed to have waived their right to move to dismiss the Fourth Amended Complaint's Title II and IIED claims after allowing them to proceed in the Third Amended Complaint since Rule 12(g)(2) prohibits a party from making "another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). However, because Cavalier does not raise it, he has waived the issue. And in any case, "Rule 12(g)(2) does not prohibit a new Rule 12(b)(6) argument from being raised in a successive motion. Stated differently, Rule 12(h)(2) specifically excepts failure-to-state-a-claim defenses from the Rule 12(g) consolidation requirement." *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012).

rather, only injunctive relief is available as a remedy." *Chaney v. Extra Space Storage Inc.*, No. 19-cv-05858, 2022 WL 4234969, at *5 (N.D. Ill. Sept. 14, 2022) (internal quotation marks omitted); *see also* 42 U.S.C. § 2000a-3. Consequently, Cavalier's Title II claim is dismissed with prejudice insofar as he seeks damages.

While Cavalier also seeks injunctive relief, the Court is doubtful that he has pleaded sufficient factual allegations showing his standing to pursue an injunction. To have standing to seek injunctive relief, "[p]ast exposure to illegal conduct," by itself, is not enough. *Sierakowski v. Ryan*, 223 F.3d 440, 443 (7th Cir. 2000). Rather, "a plaintiff in search of prospective equitable relief must show a significant likelihood and immediacy of sustaining some direct injury." *Id.*; *see also Smith v. Hilton Chi. O'Hare*, No. 08 C 3449, 2009 WL 3617509, at *5 (N.D. Ill. Oct. 27, 2009) ("While [the plaintiff] has been turned away in the past, he needs to allege facts that suggest he is likely to be turned away in the future . . . in order to have standing to seek injunctive relief."). Based on the Fourth Amended Complaint's allegations, the Court cannot find that Cavalier has pleaded that any Speedway employee other than Bohler has a practice of discriminating against African-American customers. Moreover, it is not clear whether Bohler still works at the Speedway, such that there is some risk of Cavalier being victimized by him again.

Even if Cavalier does have standing to seek injunctive relief, however, he nonetheless fails to adequately state a Title II claim. His Title II claim fails for the same reason that his § 1981 claim failed. In granting summary judgment for Defendants on Cavalier's § 1981 claim, this Court explained that because Bohler offered to make Cavalier a new sandwich (an offer Cavalier refused), Cavalier was not denied the right to make and enforce a contract for purposes of § 1981. *Cavalier v. Speedway, LLC*, No. 20-cv-03883, 2022 WL 900195, at *4 (N.D. Ill. Mar.

28, 2022). Similarly, for the Title II claim, Bohler's rejected offer of a new sandwich defeats Cavalier's contention that he was denied the full benefits or enjoyment of a public accommodation. *See, e.g.*, *Slocumb v. Waffle House, Inc.*, 365 F. Supp. 2d 1332, 1342 (N.D. Ga. 2005) ("The inquiries for a [Title II] claim and § 1981 claim are substantially similar . . . ."). Given his failure to plead a viable claim, the remainder of Cavalier's Title II claim is dismissed.

### III.   IIED

Cavalier asserts an IIED claim against Bohler based on the spitting incident and also seeks to hold Speedway vicariously liable for its employee's misconduct. The Court begins by addressing whether Cavalier has sufficiently pleaded the underlying IIED claim against Bohler and then turns to the question of whether the allegations support holding Speedway vicariously liable.

#### A.   Bohler's Liability

To plead an IIED claim in Illinois, a plaintiff must allege that: (1) the defendant's conduct was extreme and outrageous; (2) the defendant intended his conduct to cause severe emotional distress or was aware of a high probability of causing severe emotional distress; and (3) the defendant's conduct actually caused severe emotional distress. *Breneisen v. Motorola, Inc.*, 512 F.3d 972, 983 (7th Cir. 2008). According to Defendants, Cavalier's IIED claim fails because Bohler's conduct did not meet the high bar of "extreme and outrageous."

Extreme and outrageous conduct encompasses conduct of a nature "so extreme as to go beyond all possible bounds of decency and to be regarded as intolerable in a civilized community." *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80–81 (Ill. 2003). By contrast, "the tort does not extend to 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988) (quoting Restatement (Second)

of Torts § 46 cmt. d (1965)). Courts often consider three factors in determining whether conduct qualifies as extreme and outrageous:

> First, the more power and control the defendant has over the plaintiff, the more likely the conduct will be deemed extreme. Second, and in conjunction with the first consideration, courts must consider whether the defendant reasonably believed [his] objective was legitimate. Finally, courts must consider whether the defendant was aware the plaintiff was peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity.

*Franciscki v. Univ. of Chi. Hosps.*, 338 F.3d 765, 769 (7th Cir. 2003) (internal quotation marks omitted) (citing *McGrath*, 533 N.E. 2d at 809–11).

As to the first factor, the Court finds that Bohler is not depicted as having substantial power and control over Cavalier—Cavalier was free to reject the tainted sandwich and did so. Moreover, there are no allegations suggesting that Bohler had any knowledge that Cavalier was particularly susceptible to emotional distress. On the other hand, Bohler could not have believed that spitting in a customer's sandwich was in furtherance of a legitimate objective. Overall, consideration of the three factors may not appear to tilt the scales substantially toward a finding of extreme and outrageous conduct on the part of Bohler. Yet, the Illinois Supreme Court has emphasized that the three factors are not exclusive and its enumeration of them should not be understood "to imply that any or all of these factors are necessarily critical to a cause of action for [IIED]." *McGrath*, 533 N.E.2d at 811. Rather, "[t]he outrageousness of a defendant's conduct must be determined in view of all the facts and circumstances pleaded and proved in a particular case." *Id.*

Ultimately, whether a defendant's conduct was extreme and outrageous turns on whether "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim: Outrageous!" *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001) (quoting *Doe v. Calumet City*, 641 N.E.2d 498, 507 (Ill. 1994)). Viewing

Bohler's conduct from that perspective, the Court cannot conclude as a matter of law that the act of spitting in another's food would not elicit such a reaction. The Court is aware of at least one court (albeit outside of Illinois) that has found that spitting in a customer's food rises to the level of extreme and outrageous conduct. *Phillips v. Rest. Mgmt. of Carolina, LP*, 552 S.E.2d 686, 693 (N.C. Ct. App. 2001) ("[W]e cannot say, as a matter of law, that a food preparer surreptitiously spitting in food intended for a patron's consumption does not rise to the level of 'extreme and outrageous.'"). In other contexts, the act of spitting on a person has been regarded by the Illinois Supreme Court as an act "of the greatest indignity." *Alcorn v. Mitchell*, 63 Ill. 553, 554 (Ill. 1872). And spitting is well-recognized as a type of "insulting and provoking physical contact" amounting to battery. *United States v. Evans*, 576 F.3d 766, 768 (7th Cir. 2009). The offensiveness of Bohler's purported conduct is particularly acute given that he was allegedly motivated by racial animus.

Because a reasonable person could find it extreme and outrageous for a food preparer to spit in a person's food because of that person's race, Cavalier has sufficiently pleaded extreme and outrageous conduct on Bohler's part. Consequently, Defendants' motion to dismiss the IIED claim against Bohler is denied.

### B.    Speedway's Vicarious Liability

Having found that Cavalier has successfully stated an IIED claim as to Bohler, the Court considers whether Speedway may be held vicariously liable for Bohler's conduct. "Under the theory of *respondeat superior*, an employer can be liable for the torts of an employee, but only for those torts that are committed within the scope of employment." *Bagent v. Blessing Care Corp.*, 862 N.E.2d 985, 991 (Ill. 2007). So long as the employee's acts were committed within the scope of employment, an "employer's vicarious liability extends to the negligent, willful, malicious, or even criminal acts of its employees." *Id.*

14

To determine whether an employee's conduct was within the scope of his employment, Illinois courts look to section 228 of the Second Restatement of Agency. Section 228 provides:

(1) Conduct of servant is within the scope of employment if, but only if:

(a) it is of the kind he is employed to perform;

(b) it occurs substantially within the authorized time and space limits;

(c) it is actuated, at least in part, by a purpose to serve the master.

*Bagent*, 862 N.E.2d at 992 (quoting Restatement (Second) of Agency § 228 (1958)). All three of these criteria must be met for an employee to be found as acting within the scope of employment. *Adames v. Sheahan*, 909 N.E.2d 742, 755 (Ill. 2009).

Certainly, preparing a sandwich was squarely within Bohler's job responsibilities, and he allegedly spat in Cavalier's sandwich while on the job. However, Cavalier does not plausibly allege that Bohler had any motivation to further the purposes of Speedway by spitting in Cavalier's sandwich. An employer cannot be held vicariously liable for an employee's intentional tort "if the act is committed solely for the employee's own benefit." *Maras v. Milestone, Inc.*, 809 N.E.2d 825, 828 (Ill. App. Ct. 2004). As alleged, the facts in the Fourth Amended Complaint do not support a plausible inference that Bohler believed that he was benefiting Speedway by spitting in food that Speedway promised its customers would be "fresh and made to order." (Fourth Am. Compl. ¶ 38.) Further, as alleged, Bohler's conduct was motivated by his personal hostility to Cavalier, either because of Cavalier's race or his opinions on race relations. Viewed as a whole, even drawing all reasonable inferences in Cavalier's favor, the Fourth Amended Complaint's allegations describe only a self-serving motivation on the part of Bohler. Accordingly, there is no basis to hold Speedway vicariously liable for Bohler's extreme and outrageous conduct, and the IIED claim is dismissed as to Speedway.

## IV.     Negligent Training, Hiring, Retention, and Supervision

Cavalier also asserts a claim for negligent training, hiring, retention, and supervision against Speedway. Although Cavalier frames the claim as a single cause of action, in Illinois, negligent hiring and retention is a separate cause of action from negligent training and supervision. *See Doe v. Coe*, 135 N.E.3d 1, 14–15 (Ill. 2019); *Glickman v. Main-Niles Ass'n of Special Recreation*, 440 F. Supp. 3d 946, 955 n.5 (N.D. Ill. 2020). For both causes of action, the proximate cause of the plaintiff's injury must be the employer's negligence in hiring, retaining, training, or supervising an employee as opposed to the employee's wrongful act. *Vancura v. Katris*, 939 N.E.2d 328, 343 (Ill. 2010); *Van Horne v. Muller*, 705 N.E.2d 898, 905 (Ill. 1998); *Young v. Lemons*, 639 N.E.2d 610, 612–13 (Ill. App. Ct. 1994).[3]

A claim for negligent hiring and retention arises from an employer's negligence in "hiring, or retaining in its employment, an employee it knew, or should have known, was unfit for the job so as to create a danger of harm to third persons." *Van Horne*, 705 N.E.2d at 904. To state a claim, a plaintiff must plead:

> (1) that the employer knew or should have known that the employee had a particular unfitness for the position so as to create a danger of harm to third persons; (2) that such particular unfitness was known or should have been known at the time of the employee's hiring or retention; and (3) that this particular unfitness proximately caused the plaintiff's injury.

---

[3] In his complaint, Cavalier alleges that Speedway is liable for negligent training, hiring, retention, and supervision "under the doctrine of respondeat superior." (Fourth Am. Compl. ¶ 132.) But it is well-established that the negligence claim imposes direct liability upon the employer for its own negligence as distinct from liability under a *respondeat superior* theory. *Van Horne*, 705 N.E.2d at 905. In the briefs, the parties engage in an ultimately immaterial back-and-forth regarding the impact of Cavalier's erroneous invocation of *respondeat superior* liability. The Court has no question that Cavalier's negligent training, hiring, retention, and supervision claim seeks to hold Speedway directly liable for its employment of Bohler, and that claim can coexist with the Fourth Amended Complaint's other contentions regarding Speedway's vicarious liability. *See McQueen v. Green*, 202 N.E.3d 268, 279 (Ill. 2022) ("[S]o long as a good-faith factual basis exists for a plaintiff's claim of direct negligence against an employer, the plaintiff should be allowed to pursue such a claim in addition to a claim of vicarious liability.").

*Id.* According to Cavalier, Bohler's past disciplinary issues both at Speedway and at prior employers gave Speedway notice that Bohler was unfit for employment and thus posed a danger to customers. Specifically, Cavalier alleges that Bohler had been terminated by a previous employer for sexual harassment and was also accused of sexual harassment while at Speedway. (Fourth Am. Compl. ¶¶ 103–05.) In addition, Cavalier notes that, during his employment at Speedway, Bohler had been reprimanded for his negative attitude, being disrespectful to his coworkers, and other, unspecified dishonest conduct. (*Id.* ¶¶ 106–10.) Finally, Cavalier claims that Bohler had informed his manager that he did not wish to work as a food preparer because he did not believe that he could perform the job satisfactorily. (*Id.* ¶¶ 93–96.) Because Speedway had multiple indications that Bohler was unfit for the job, Cavalier claims that it was negligent in nonetheless hiring and retaining Bohler as a food preparer.

To state a viable claim for negligent hiring and retention, "it is not enough for the plaintiff to simply allege that the employee was generally unfit for employment." *Van Horne*, 705 N.E.2d at 905. Instead, "a plaintiff must show that the employee was unfit in a particular manner, which particular unfitness 'must have rendered the plaintiff's injury foreseeable to a person of ordinary prudence in the employer's position.'" *Doe*, 135 N.E.3d at 17 (quoting *Van Horne*, 705 N.E.2d at 906). Thus, the question here is whether Speedway could have foreseen from Bohler's background that he was likely to deliberately taint a customer's food if he were hired and retained as a food preparer. Based on the allegations in the Fourth Amended Complaint, the Court finds that such risk was unforeseeable. Most of the allegations regarding Bohler's unfitness concern his treatment of coworkers, not customers[4] And while Bohler

---

[4] Cavalier does allege previous incidents where Bohler was rude to Cavalier, sometimes in the presence of a supervisor, but that rudeness consisted of disapproving looks and exasperated sighs. (Fourth Am.

purportedly told his supervisor that he did not believe he could continue to perform his job as food preparer, that simply shows that Bohler doubted his ability to competently perform in that job. By contrast, Cavalier was not injured by Bohler's incompetence in making sandwiches but rather by his deliberate decision to prepare an unsanitary food product. In short, Cavalier fails to plead sufficiently a relationship tying together Bohler's past misconduct as an employee with the particular misconduct at issue here—spitting in a customer's sandwich. *See, e.g.*, *Van Horne*, 705 N.E.2d at 906 (finding that an employee's history of outrageous and offensive conduct did not suffice to put his employer on notice that the employee would make false, defamatory statements if hired as a radio deejay).

As to the training and supervision portion of Cavalier's claim, "claims for negligent training and supervision are 'best analyzed under principles generally applicable to negligence cases.'" *Schramm v. Peregrine Transp. Co.*, No. 3:22-CV-161-NJR, 2023 WL 2349346, at \*4 (S.D. Ill. Mar. 3, 2023) (quoting *Nat'l R.R. Passenger Corp. v. Terracon Consultants, Inc.*, 13 N.E.3d 834, 839 (Ill. App. Ct. 2014)). Accordingly, "a plaintiff must allege the existence of a duty on the part of the employer to the injured party, a breach of that duty, and an injury proximately caused by the breach." *Id.* The Court finds that the Fourth Amended Complaint is devoid of well-pleaded factual allegations showing how Speedway breached any duty to train or supervise Bohler or how such a breach caused Cavalier's injury. Given that Bohler supposedly made a deliberate choice to spit in Cavalier's sandwich, it is difficult to see how Cavalier's injury could have been avoided had Speedway better trained or supervised Bohler, and Cavalier fails to identify what training or supervision should have been provided by was not. *See, e.g.*,

---

Compl. ¶¶ 32–36.) The Court cannot find that Speedway should have foreseen that Bohler's hostility would escalate to the point of Bohler spitting in Cavalier's food.

*Dugar v. U.S. Bank Nat'l Ass'n*, No. 21 CV 4052, 2021 WL 6063869, at *7 (N.D. Ill. Dec. 22, 2021) (dismissing a negligent training claim where the plaintiffs did not provide "any allegations to suggest that more training by defendant would have prevented their injuries"); *Herrera v. Di Meo Bros., Inc.*, 529 F. Supp. 3d 819, 832 (N.D. Ill. 2021) (holding that the plaintiff failed to state a negligent supervision claim where he failed to plead facts connecting the racially discriminatory harassment he endured from his coworkers to his employer's deficient supervision).

Whether construed as a claim for negligent hiring and retention or a claim for negligent training and supervision, Cavalier fails to allege facts supporting Speedway's direct liability for Bohler's conduct. For that reason, the negligent training, hiring, retention, and supervision claim is dismissed.

## V.      Gross Negligence

Finally, Cavalier brings a claim for gross negligence against Bohler.[5] Illinois courts commonly refer to gross negligence as "willful and wanton conduct." *Ziarko v. Soo Line R.R.*, 641 N.E.2d 402, 406 (Ill. 1994). "[T]he label 'willful and wanton conduct' has developed in [Illinois] as a hybrid between acts considered negligent and behavior found to be intentionally tortious." *Id.* Willful and wanton conduct encompasses "that area of fault between ordinary negligence and actual malice." *Id.* (internal quotation marks omitted). "Under the facts of one case, willful and wanton misconduct may be only degrees more than ordinary negligence, while under the facts of another case, willful and wanton acts may be only degrees less than intentional wrongdoing." *Id.*

---

[5] Cavalier also seeks to hold Speedway vicariously liable for Bohler's gross negligence. That claim fails in light of the Court's conclusion above that Speedway cannot be held liable for Bohler's purported misconduct under a *respondeat superior* theory.

There is no standalone claim for willful and wanton conduct in Illinois. *Doe*, 135 N.E.3d at 20. Instead, willful and wanton conduct is treated as "an aggravated form of negligence." *Id.* Therefore, "[w]illful and wanton conduct requires plaintiffs to plead and prove the elements of negligence—duty, breach, proximate causation, and damages—as well as a deliberate intention to harm or a conscious disregard for plaintiffs' welfare." *Jane Doe-3 v. McLean Cnty. Unit Dist. No. 5 Bd. of Dirs.*, 973 N.E.2d 880, 890 (Ill. 2012).

Here, the overwhelming majority of the Fourth Amended Complaint's allegations concerning Bohler's actions do not sound in negligence but instead plead a purely intentional tort. And it is doubtful that Cavalier may simply refashion his allegations of an intentional tort to state a distinct, negligence-based claim under Illinois law. *Cf. Hamilton v. United States*, No. 3:18-cv-02017-JPG-RJD, 2019 WL 224255, at *2 (S.D. Ill. Jan. 16, 2019) ("[W]hile Count I of the complaint is captioned 'negligence,' all of the alleged negligent activity therein are commissions of *other* intentional torts . . . . That is not negligence, but rather a bundle of separate state law claims hidden under a negligence label . . . ."); *Country Mut. Ins. Co. v. Dahms*, 58 N.E.3d 118, 127 (Ill. App. Ct. 2016) ("Even where a complaint alleges an act is 'negligent,' if the allegations show that what is truly alleged can only be characterized as an intentional act, the substance will control over the moniker placed on it by a plaintiff."); *Moskowitz v. City of Chicago*, No. 93 C 1335, 1993 WL 478938, at *6 (N.D. Ill. 1993) (dismissing a negligence claim that more closely resembled an intentional tort).

At times, Cavalier seems to suggest that Bohler's conceded act of blowing in the direction of Cavalier's sandwich is sufficient to support a claim of willful and wanton conduct. But because the Fourth Amended Complaint predominantly depicts Bohler as acting maliciously, it lacks allegations supporting the elements of negligence. In particular, Defendants argue that

Cavalier fails to plead any duty that Bohler owed to Cavalier. It is true that explicit allegations of duty are absent from the Fourth Amended Complaint. Such a failure has led other courts to dismiss willful and wanton conduct claims. *E.g.*, *Cusick v. Gualandri*, 573 F. Supp. 3d 1256, 1273 (N.D. Ill. 2021) (dismissing a willful and wanton conduct claim because "the complaint does not articulate any negligence-based duty owed by Defendants to [the plaintiff]"). Although not explicitly pleaded, the Court has no trouble finding that the Fourth Amended Complaint's allegations demonstrate that Bohler owed Cavalier a duty to use reasonable care in preparing a sandwich meant for Cavalier's consumption. *See Krywin v. Chi. Transit Auth.*, 938 N.E.2d 440, 447 (Ill. 2010) ("The touchstone of the duty analysis is to ask whether the plaintiff and defendant stood in such a relationship to one another that the law imposes on the defendant an obligation of reasonable conduct for the benefit of the plaintiff.").

Cavalier's claim nonetheless falters as to the proximate cause element. Insofar as Bohler's blowing may plausibly be considered a breach, there is at most only a highly attenuated chain of causation between his breach of duty and Cavalier's injury. One might expect that where a food preparer breaches his duty to prepare food safe for consumption by blowing and inadvertently causing it to be tainted with saliva, the resulting injury would come from the unsanitary condition of the food. But here, Cavalier was able to reject the sandwich and obtain a refund. His claimed injury instead comes from his emotional distress caused by seeing Bohler blowing in the direction of his sandwich and possibly expelling saliva, and interpreting that act as Bohler deliberately spitting in his food out of race-based hostility. However, only when viewed as an intentional act is it plausible that Bohler could have foreseen that his act of blowing in the direction of a sandwich would be viewed by a customer as a racist attack that could cause significant emotional injury. *See City of Chicago v. Beretta USA Corp.*, 821 N.E.2d 1099, 1127

(Ill. 2004) ("[L]egal cause[] is established only if the defendant's conduct is so closely tied to the plaintiff's injury that he should be held legally responsible for it." (internal quotation marks omitted)); *see also In re Boeing 737 MAX Pilots Litig.*, No. 19-cv-5008, 2022 WL 16553025, at *10 (N.D. Ill. Oct. 31, 2022) ("The greater the separation between the conduct and the injury, the less likely that proximate causation can bridge the gap.").

Finally, to the extent Bohler's conduct satisfies the elements of ordinary negligence, Cavalier's claim of willful and wanton conduct would still fail because Cavalier suffered no physical harm. In Illinois, willful and wanton conduct "applies only to reckless or intentionally tortious conduct that causes ***physical harm*** to a person or property." *Valfer v. Evanston Nw. Healthcare*, 52 N.E.3d 319, 327–28 (Ill. 2016) (emphasis added).

At bottom, there is a mismatch between the allegations in the Fourth Amended Complaint and the asserted claim of gross negligence (*i.e.*, willful and wanton conduct). Consequently, Cavalier's gross negligence claim is dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion for judgment on the pleadings (Dkt. No. 73) is denied and their motion to dismiss (Dkt. No. 72) is granted in part and denied in part. The IIED claim against Defendant Bohler in Count II survives. The remaining claims in the Fourth Amended Complaint are dismissed for failure to state a claim.

ENTERED:

Dated:  March 29, 2024

_____
Andrea R. Wood
United States District Judge

22